IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LLOYD PHILLIP LOCKE,

    Petitioner,

vs.

MICHAEL EVANS,

    Respondent.

No. CIV S-07-0130 MCE CHS P

<u>FINDINGS AND RECOMMENDATIONS</u>

## I. INTRODUCTION

Petitioner Lloyd Phillip Locke is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. He challenges the 2004 judgment of conviction entered in the Sacramento County Superior Court, case number 03F08925. Petitioner alleges that his custodial confession was illegally obtained. Specifically, he asserts that he invoked his right to silence during an exchange with Deputy Oania, after which Detective Bielcik improperly reinitiated questioning. Petitioner alleges that his statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and also that they were involuntary.

/////

/////

1

## II. BACKGROUND

The following background summary was set forth in the unpublished opinion of the California Court of Appeal, Third District, case number C048693.[1]

> Following a fight with her father (the defendant), the 17-year-old victim reported he had assaulted her with a knife and a stick, had pointed guns at her, and had fired at least one of them. She drew a map of the house, identifying where the weapons could be found, and consented to a search of the house for weapons. She also told officers defendant had been sexually molesting her since she was five.
>
> Deputies contacted defendant around 3:30 p.m. He admitted threatening his daughter with a knife and admitted drinking whisky after fighting with her. He had a strong odor of alcohol, spoke quickly, and moved from side to side as he spoke.
>
> Placed under arrest for assault with a deadly weapon, making criminal threats, and child abuse, defendant consented to a search of the house for weapons.
>
> When Deputy Oania read defendant his *Miranda* rights and asked if he understood them, defendant responded, "No." Deputy Oania checked the "No" box on the written *Miranda* advisement form next to the question, "Do you understand each of these rights I have explained to you?" and wrote "Oania" on the form. Deputy Oania did not question defendant further.
>
> Deputies searched the house, located the knife and stick where both defendant and his daughter had indicated they could be found, found three firearms, and discovered bullet holes inside the residence.
>
> Meanwhile, defendant remained in custody and Detective Bielcik, aware of the allegations of sexual abuse, pressed defendant to provide consent to an unrestricted search of the house. At approximately 7:20 p.m., defendant consented to an unrestricted search of the house.
>
> Deputies conducted a second, complete search of the house between approximately 8:00 and 10:00 p.m., during which they seized homemade videotapes depicting sex acts.
>
> Simultaneously, Detective Bielcik began to interview defendant. Defendant reported he had snorted $20 worth of crank at about 2:00 a.m. that morning, drank about four ounces of whiskey shortly

---

[1] Lodged in this record as Doc. 3 on 6/04/07.

2

after noon, smoked marijuana at about 3:00 in the afternoon, but stated he no longer felt under the influence of any substance. At about 9:30 p.m., Detective Bielcik re-*Mirandized* defendant. Bielcik "slowly" read the advisement form to defendant, who responded that he understood his rights. Defendant said, "I'll talk to you," signed the waiver form, and initialed statements that he understood his rights and, with those rights in mind, wished to speak to officers.

Defendant then told Detective Bielcik that he and the victim were consensual "sexual partners" and had engaged in sex acts "uncountable times," beginning when she was six and a half years old and continuing until the day before his arrest.[2]

He was charged with 39 counts of sex offenses committed between 1991 and 2003 (including rape, lewd acts, and oral copulation), two counts of felony assault, and one count of making a criminal threat.

Defendant moved to suppress (1) the nonweapon evidence seized from his home and (2) his confession to Detective Bielcik, arguing that his statements and his second, unqualified consent to search were involuntary products of coercion by Detective Bielcik. He also asserted that he had invoked his right to remain silent when he received the first *Miranda* advisements from Deputy Oania, thereby rendering unlawful Detective Bielcik's reinitiating questioning.

After a hearing, the trial court granted defendant's motion to suppress evidence found in the second search of his house, on the ground defendant's unqualified consent to search his house was involuntary because defendant consented only after trying "no less than 28 times" to avoid doing so, thereby compelling the inference defendant "no longer felt free to decline the repeated requests[.]"

But the court denied defendant's motion to suppress his statements to Detective Bielcik. The court noted that when defendant was first read his *Miranda* rights by Deputy Oania in the afternoon, he showed evidence of intoxication and neither invoked his right to remain silent nor requested an attorney. After several hours had passed and "the effects of the alcohol and drugs [were allowed] to dissipate," Detective Bielcik did not act improperly in re-*Mirandizing* defendant, or in taking his statement after defendant responded "I'll talk to you" and signed the waiver.

(C048693 opinion at 1-2.)

---

[2] The victim was pregnant at the time of defendant's arrest, and tests later established defendant was the father.

3

On December 21, 2004, petitioner pleaded no contest to four counts of committing forcible lewd acts on a child, two counts of committing non-forcible lewd acts on a child, and one count of making a criminal threat, during which he personally used a firearm.[3] In exchange, the prosecution agreed to dismiss the other 35 counts alleged in the information. Petitioner was sentenced to the stipulated sentence of 49 years. (C048693 opinion at 2.)

### III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are different. Under the "contrary to" clause of §2254(d)(1), a federal court may grant the writ only

---

[3] The court later granted petitioner's request to withdraw his plea and to enter a "slow plea on stipulated facts" to the same charges, with the same stipulated sentence, so as to preserve his right to challenge the issues presented in this petition. (C048693 opinion at 2.)

4

if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405. As the Third Circuit has explained, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent*, *SCI Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original). The state court is not required to cite the specific controlling test or Supreme Court authority, so long as neither the reasoning nor the result of the state court decision contradict either. *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 410. The focus of this inquiry is whether the state court's application of clearly established federal law is objectively unreasonable. *Id*. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*.

This court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003). If relief is precluded by 28 U.S.C. §2254(d), the court may deny the petition without addressing the merits of the claim. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

/////
////
/////

## IV. ANALYSIS OF PETITIONER'S CLAIMS

### A. Invocation of the right to remain silent

When a person in custody is subjected to interrogation, he must first be read his *Miranda* rights in order for the information obtained to be admissible in court. *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). If the suspect invokes either his right to silence or his right to an attorney, then that invocation must be "scrupulously honored," and all further interrogation must cease immediately. *Id*. at 479.

Prior to commencement of petitioner's trial, the court held an evidentiary hearing on the defense's motion to suppress the confession. The following evidence was adduced.

While riding his motorcycle on the day in question, petitioner was pulled over by Deputy Oania at approximately 3:30 p.m. (RT at 62.) When asked whether he knew where his daughter was, petitioner stated that she ran out of the house after he tried to force her to talk by holding a knife to her chest. (RT at 64.) He had a strong odor of alcohol on his breath. (RT at 65-66.) Petitioner stated he had consumed Jack Daniels after the argument with his daughter. (RT at 66.) Petitioner was arrested and transported to the police station. (RT at 66-69.) A small brass smoking pipe was recovered from his possession. (RT at 67.) At the station, Oania read him his *Miranda* rights, and asked whether he understood them. (RT at 71) Petitioner responded "no." (RT at 71.) Oania did not question him further. (RT at 72.)

Petitioner was transported to another location. (RT at 72.) Later that evening, Detective Bielcik interviewed him. The interview was videotaped and later transcribed. (RT at 172, 266-67; CT at 342-380.) Bielcik testified he was aware that petitioner had previously indicated he did not understand his rights and that no *Miranda* waiver had been obtained. (RT at 172.) Bielcik first obtained petitioner's consent for a full search of the home. (RT at 177.) The trial court later found that petitioner evaded, refused, or questioned Bielcik's request for consent to a full search 28 times and ruled that the consent was not voluntarily given because it appeared that petitioner no longer felt free to decline Bielcik's repeated requests, and granted petitioner's

motion to suppress the fruits of the search. (RT at 244.)

Bielcik then asked several background questions unrelated to the investigation. Petitioner indicated he had ingested a gram of "crank" at 2:00 a.m. the night before, drank four ounces of whiskey at 12:45 p.m. that day, and smoked marijuana at 3:00 p.m. (CT at 349-52.) In petitioner's opinion, he was no longer under the influence of any of these substances. (CT at 352.)

Bielcik stated that he wanted to give petitioner a chance to tell his side of the story. (CT at 353.) Petitioner asked to speak to Elizabeth, but Bielcik told him that wouldn't happen for a long time. (CT at 353-54.) Bielcik then slowly read petitioner his *Miranda* rights and this time, petitioner stated that he understood his rights (RT at 172; CT at 354), and that he would talk to Bielcik. (CT at 354.) Shortly after that, petitioner admitted to having intercourse with his daughter "uncountable" times and gave a detailed chronology of their sexual history. (CT at 356-64.)

The trial court found that petitioner did not invoke his right to remain silent, and denied the motion to suppress the confession. (RT at 244, 247.) The trial court reasoned:

> the defendant never indicated a desire to remain silent. He simply said he didn't understand his rights. He was re-advised -- re-advised, and signed the waiver without questioning it as he had so thoroughly questioned re-signing the consent to search form. [¶] Several hours had passed. This allowed him to calm down from the excitement of yelling at his daughter to the extent he had lost his voice. It also allowed the effects of the alcohol and drugs to dissipate. [¶] And it was a second officer talking about the allegations of sexual abuse when the first officer, Oania, had originally contacted the defendant on the physical assault. ...[T]here is no showing of gamesmanship as it relates to *Miranda*.

(RT at 246.)

On direct review, the California Court of Appeal, Third District, agreed with the trial court, noting:

> Although a suspect's assertion of the privilege against self-incrimination need not be "unequivocal" (*People v. Thompson*) (1990) 50 Cal.3d 134, 165) or "invoked with unmistakable clarity"

> (*People v. Randall* (1970) 1 Cal.3d 948, 955, overruled on other grounds in *People v. Cahill* (1993) 5 Cal.4th 478, 510, fn. 17), it must be something more than "metaphorical," as defendant suggests. The court found defendant "never indicated a desire to remain silent" and "did not invoke his right to remain silent." Viewed in context, we agree with the court that defendant's "no" response when asked if he understood the recitation of his *Miranda* rights did not constitute an invocation of his right to silence. In fact, defendant's response to Deputy Oania cannot be characterized even as an equivocal assertion of that right.
>
> Far from suggesting a subtle use of metaphors, evidence supports the court's finding defendant may have failed to understand the *Miranda* advisements because he was intoxicated. The court credited Deputy Oania's observations that -- when first advised of his *Miranda* rights -- defendant smelled of alcohol, spoke quickly, and moved from side to side, and found defendant was then "under the influence... [and] highly agitated." Defendant himself admitted he had been drinking a few hours before.
>
> Defendant insists we must construe his response as an invocation because "the patrol officers who had contact with [defendant] treated it as an invocation" and Detective Bielcik likewise "operated under the assumption that there had been an invocation" by defendant upon his first advisement in the afternoon. Our review of the record is to the contrary: nothing in the record indicates any officer believed defendant ever invoked his right to remain silent.
>
> Instead, like the trial court, we infer from the fact that defendant was not interrogated after Deputy Oania attempted to advise him of his rights that Oania believed defendant could not evaluate *whether* to waive his right to remain silent, not that he *had* invoked it. Officers properly refrained from addressing the matter further with defendant until defendant "had a chance to calm down... [and] sober up[,]" and could understand the recitation of *Miranda* advisements... Indeed, had Deputy Oania proceeded with further attempts to *Mirandize* defendant and/or take his statement, he might have exposed deputies to a claim they attempted to exploit defendant's intoxicated state.
>
> There was no *Miranda* violation.

(C048693 opinion at 7-9.)

The United States Supreme Court has made clear that in order to invoke the right to counsel, a suspect must make an *unambiguous* request for an attorney, articulating his desire sufficiently clearly that a reasonable police officer in the circumstances would understand the

8

statement to be a request for an attorney. *Davis v. Unites States*, 512 U.S. 452, 459 (1994). Neither the Supreme Court nor the Ninth Circuit has specifically imported the *Davis* standard for invocation of the right to counsel into the right to silence context. *United States v. Shi*, 525 F.3d 709, 729 (9th Cir. 2008)*; Evans v. Demosthenes*, 98 F.3d 1174, 1176 (9th Cir.1996).

With respect to invoking the right to silence, it is not required that a suspect "provide any statement more explicit or more technically-worded than 'I have nothing to say.'" *Arnold v. Runnels*, 421 F.3d 859, 865 (9th Cir. 2005). Still, "at a minimum, such invocation must not be so equivocal or unclear that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking his right to remain silent." *Shi*, 525 F.3d at 729; *Arnold*, 421 F.3d at 866 (*citing Davis*, 512 U.S. at 459).

Petitioner did not indicate that he had nothing to say or that he wished to remain silent; rather, he clearly stated "no" in response to Oania's question whether he understood his rights. Petitioner's response would not have caused a reasonable officer under the circumstances to understand anything more than that he "might" have wanted to invoke either his right to remain silent or another right accorded by *Miranda*. Accordingly, it was not required that all questioning cease at that time. *Shi*, 525 F.3d at 729; *Arnold*, 421 F.3d at 866.

Petitioner maintains that his statement that he did not understand his rights "was nothing but an affirmation of his right to remain silent." (Petition, P&A at 20.) Both the trial court and state appellate court, however, reached the opposite conclusion, which is well-supported in the record based on the circumstances of the arrest and subsequent interview. Petitioner's contrary interpretation of the statement at issue does not sufficiently show that the state courts' interpretation was an unreasonable determination of the facts in light of the evidence presented. Petitioner never indicated a desire to remain silent, as required to invoke the right. No clearly established federal law requires that all interrogation cease after an individual indicates that he does not understand his rights. The state appellate court's rejection of petitioner's *Miranda* claim is not contrary to, or an unreasonable application of, federal law as

determined by the Supreme Court.

### B. Voluntariness of the statements

To be admissible for any purpose, a statement cannot be the product of any force or threats by the government. *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991). The United States Constitution demands that confessions be made voluntarily in order to be admissible at trial. *Lego v. Twomey*, 404 U.S. 477, 478 (1972). A confession is voluntary if it is "the product of a rational intellect and a free will." *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989) (quoting *Townsend v. Sain*, 372 U.S. 293, 307 (1963)); *see also Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). The test for voluntariness, however, is not a simple question of whether the suspect spoke of free will. Rather, "coercive police activity is a necessary predicate to the finding that a statement or confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Petitioner alleges that the *Miranda* waiver he gave to Detective Bielcik and his subsequent statements were involuntary. Petitioner asserts that his "will was broken down" and that Bielcik obtained the waiver only "[b]y ignoring petitioner's statements that he did not want to talk." (Petition, P&A at 22.)

The relevant question is whether it appears, by preponderance of the evidence, that petitioner's statements were the result of his will being overborne by coercive police conduct. *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991) (whether defendant's statement is "the product of coercion" by law enforcement depends on whether his "will was overborne"); *Connelly*, 479 U.S. at 168 (reaffirming that "the voluntariness of a confession need only be established by a preponderance of the evidence"). The inquiry must be based on the totality of the circumstances. *See Winthrow v. Williams*, 507 U.S. 680, 711-12 (1993). Relevant factors to consider may include the youth of the accused, lack of education, low intelligence, lack of advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, or the use of physical punishment such as deprivation of food or sleep).

*Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

In this case, the only *Schneckloth* factor alleged by petitioner is a repeated and prolonged attempt by Bielcik to question him. With regard to this factor, the interview transcript shows that, after obtaining petitioner's unhesitating response to some background questions (including his name, address, age, work, education, health, arrest and substance abuse history), and ensuring that petitioner was oriented, Detective Bielcik continued:

> [Detective:] What I wanted to do was kind of give you a chance to tell your side of the story if you want, you are not obligated to, but since...
>
> [Petitioner:] Can I talk to [the victim]?
>
> [Detective:] They are still looking at her right now.
>
> [Petitioner:] Looking at her?
>
> [Detective:] Examining her. They have to wait for a doctor. They are backed up. So it's up to you if you want to talk to me. You are not obligated to. But since you are under arrest, I have to advise you of you[r] rights.
>
> [Petitioner:] I'd rather talk to her. You can be with me. In front of us or whatever.
>
> [Detective:] Well, to be honest with you, that's not going to happen, because it's going to be forever until she is around.
>
> [Petitioner:] What? Say that again?
>
> [Detective:] It's going to be a long, long, long time until they are done with her at the hospital.
>
> [Petitioner:] Really. How long is that?
>
> [Detective:] I don't know. Rest assured that it will be a long time. It will be sometime tonight, you know?
>
> [Petitioner:] What time is it, about eleven?
>
> [Detective:] Coming up on 9:30. So basically what I want to do... We'll go over it again like we did before with the other. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to an attorney and have an attorney present before and during questioning and if you cannot afford an attorney, one will be

appointed free of charge to represent you before and during questioning. Do you understand each of these rights I have explained to you?

[Petitioner:] Yes.

[Detective:] With that in mind, do you want to talk to me now?

[Petitioner:] I'll talk to you.

(CT at 353-54.)

Bielcik's conduct and statements as set forth above do not fall within the realm of coercive police conduct established by existing Supreme Court precedent. *C.f. Mincey v. Arizona,* 437 U.S. 385 (1978) (defendant subjected to 4-hour interrogation while incapacitated and sedated in intensive-care unit); *Greenwald v. Wisconsin,* 390 U.S. 519 (1968) (defendant, on medication, interrogated for over 18 hours without food or sleep); *Beecher v. Alabama,* 389 U.S. 35 (1967) (police officers held gun to the head of wounded suspect to extract confession); *Davis v. North Carolina,* 384 U.S. 737 (1966) (16 days of interrogation in closed cell without windows and with limited food); *Reck v. Pate,* 367 U.S. 433 (1961) (defendant held for four days with inadequate food and medical attention until confession obtained); *Culombe v. Connecticut,* 367 U.S. 568 (1961) (defendant held for five days of repeated questioning during which police employed coercive tactics); *see also Colorado v. Connelly*, 479 U.S. at 164 (noting that all Supreme Court decisions finding a confession to be involuntary "have contained a *substantial* element of coercive police conduct") (emphasis added).

Moreover, it does not appear that petitioner's will was overborne. Rather, as the California Court of Appeal determined, the transcript demonstrates that petitioner

> "clearly want[ed] to talk to the officer" and had "become interested in letting the officer hear his side of the story." He called the officer by first name, willingly gave extensive background information, and at no point appeared unwilling to speak to the detective, even after receiving his *Miranda* advisements. We do not construe his interest in speaking to the victim as an attempt to avoid or defer an interrogation, as he invited the detective to be present.

(C048693 opinion at 12-13.)

The state appellate court concluded that petitioner's statements to Bielcik were voluntary. (C048693 opinion at 13.) Upon the record of this case, this determination is not contrary to, or an unreasonable application of, any federal law as set forth by the Supreme Court. Nor is it based on an unreasonable determination of the facts in light of the evidence. Petitioner is not entitled to habeas corpus relief.

V. CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 26, 2009

          /s/ Charlene H. Sorrentino
          Charlene H. Sorrentino
          United States Magistrate Judge